ELAINE JACOBER and STEPHEN JACOBER, individually and on behalf of THERESA JACOBER and JEREMY JACOBER; LAURIE HIGA and WALTER HIGA, individually and on behalf of BRANDY HIGA and SUMMER HIGA; and on behalf of all others similarly situated, Plaintiffs-Appellees/Cross-Appellants, *v.* FRANKLIN SUNN, Interim Director of the Department of Social Services and Housing, State of Hawaii, and ROBERT W. MILLAR, Medical Care Administrator, State of Hawaii, Defendants-Appellants/Cross-Appellees

(CIVIL NO. 6514)

AND

THERESA JACOBER and JEREMY JACOBER, by their next friend, ELAINE JACOBER, and on behalf of all others similarly situated, Plaintiffs, *v.* FRANKLIN SUNN, Interim Director of the Department of Social Services and Housing, State of Hawaii, Defendants

(CIVIL NO. 6673)

APPEAL NO. 10121

*JANUARY 21, 1986*

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C.J.

This appeal involves the consolidated class actions of Civil Nos. 6514 and 6673. On June 25, 1984, the circuit court entered an "Amended Decision Granting Partial Summary Judgment and Denying Defendants' Cross-Motion for Summary Judgment" (Amended Decision). In effect, the Amended Decision (1) decreed that the State Department of Social Services and Housing (DSSH) could not disqualify adults and their children from medical and financial general assistance benefits because of the failure of one adult member of the assistance household to comply with the work requirements imposed by Hawaii Public Welfare Manual (HPWM) § 3113.08 (December 1978);[1] and (2) ordered

---

[1]The pertinent portions of Hawaii Public Welfare Manual § 3113 are §§ 3113.08(a) and 3113.08(b)(1) (December 1978) which provided as follows:

3113.08  *Disqualification and Exclusion from GA Program for Failure to Comply with Program Requirements*

(a) Recipients who refuse or fail to comply with any of the requirements or conditions of the GA program shall be disqualified and excluded from receiving GA benefits. The failure of one member of the recipient assistance unit to comply with the requirements or conditions shall exclude the entire assistance unit from the GA program.

*Exceptions:*  The failure of a dependent child between the ages of 16 and 18, not

payment of wrongfully denied benefits.

The Interim Director of DSSH who is now the Director (Director) and the State Medical Care Administrator (collectively "defendants") appealed the Amended Decision, and plaintiffs cross-appealed. We affirm.

The consolidated actions are here on appeal for the second time. We dismissed the first appeal for lack of appellate jurisdiction on grounds that the appeal was not from a "final judgment." *Jacober v. Sunn,* 5 Haw. App. 20, 674 P.2d 1024 (1984). In that opinion, we delineated the relevant facts up to the time of the first appeal. We incorporate those facts in this opinion by reference.

Upon remand, pursuant to plaintiffs'[2] motion to amend the original February 3, 1982 decision, the circuit court entered the Amended Decision.

The Amended Decision redefined the class as follows:

*Subclass A:* All residents of the State of Hawaii and members of their assistance households who have been denied medical assistance or money payments by the Department of Social Services and Housing due to a failure of a parent or person with legal responsibility for support to comply with the work requirements imposed by Hawaii Public Welfare Manual Section 3113.

*Subclass B:* All residents of the State of Hawaii who are minors, or who are under the age of 21, who have been denied medical assistance or money payments by the Department of Social Services and

---

attending school, or between the ages of 18 and 21, attending school or enrolled in a training program and employed less than 30 hours, to satisfy the requirements set forth in sub-section 3113.07 or to maintain employment, respectively, will not disqualify or exclude the entire assistance unit from the GA program; only the non-complying dependent child will be disqualified and excluded from the GA program.

    (b) *Disqualification/Exclusion Periods*

       (1) Non-compliance with the following requirements will result in disqualification and exclusion from the GA program for twelve months:

        (A) Quitting a job without good cause

        (B) Being fired from a job for misconduct

        (C) Refusing or failing to exhaust unemployment insurance benefits entitlement

        (D) Refusing employment

[2]In this opinion, the word "plaintiffs" collectively refers to Mr. and Mrs. Stephen Jacober (Jacobers) and Mr. and Mrs. Walter Higa (Higas), individually and on behalf of their minor children and others similarly situated, in Civil No. 6514, and the Jacobers' minor children, by their next friend, and on behalf of all others similarly situated, in Civil No. 6673.

Housing because a parent or person with legal responsibility for support failed to comply with the work requirements imposed by Hawaii Public Welfare Manual Section 3113.

As to the merits of plaintiffs' claims, the Amended Decision ordered and decreed that from December 1978 through October 1982:

1. All Hawaii residents, including unborn children, who were under the age of 21, who were financially eligible were entitled to receive medical assistance pursuant to the Hawaii State Plan for Medical Assistance under Title XIX of the Social Security Act.

2. Defendants could not disqualify adults and their children from medical and/or financial General Assistance benefits based on the failure of another adult in the assistance household to comply with the work requirements of Section 346-71, H.R.S.

3. Provisions of H.P.W.M., Section 3113, which required the Defendants to disqualify adults and their children from medical and/or financial General Assistance benefits based on the failure of another adult in the assistance household to comply with the work requirements of the General Assistance program were invalid because such provisions were not authorized by Section 346-71, H.R.S.

4. The procedure section of H.P.W.M. Section 3404 was invalid as it was a rule as that term is defined by Section 91-1(4), H.R.S., which was not properly adopted pursuant to Section 91-3, H.R.S. Pursuant to provisions of H.P.W.M. 3404.3(a)(3)(c), the work requirements under Section 3113 did not apply to those applying for medical assistance only.

5. Plaintiffs and eligible members of the class shall be entitled to recover from Defendants retroactive benefits for medical expenses and financial benefits which should have been paid by Defendants but for the wrongful denial of the above-described assistance. Reimbursement for all payments of financial benefits and medical expenses shall commence from December 1978 and continue through October 1982.

6. Defendants shall reinstate members of assistance households who apply for retroactive General Assistance benefits if their benefits were reduced, terminated, denied, or not reinstated, pursuant to the invalid and inoperative rules. Such reinstatement shall be effective as of the date of the error, but in no event before December 1978, and such household members shall be reinstated to the General

Assistance benefit level and status which the members would have received, but for the rules declared unlawful in this Order. Such reinstatement shall remain in effect and retroactive benefits shall be awarded through the benefit month of October 1982, so long as the applicant or recipient remained eligible.

7. Defendants may reduce or terminate the retroactive public assistance benefits awarded Plaintiffs and class members commencing in the benefit month after October 1982, based on the new rules which were properly promulgated as of October 20, 1982; provided, however, that the Defendants must provide each Plaintiff and class member a notice and opportunity to contest such proposed reductions and/or terminations, pursuant to H.R.S. Chapter 91.

8. Defendants shall, within four months of the date of entry of this Order, process all applications for reinstatement filed by Plaintiffs and class members and shall notify all applicants in writing as to the Defendants' decision on their application for retroactive benefits. All applicants for retroactive benefits shall also be advised of their right to contest an adverse determination by the Defendants on their claim through the contested case procedures specified by the Rules and Regulations of the Department of Social Services and Housing.

On August 15, 1984, the lower court authorized defendants to file an interlocutory appeal from the Amended Decision and this appeal and cross-appeal followed.

The issues raised by defendants' appeal and our answers are as follows:

I. Whether in implementing HRS § 346-71 as it read after its amendment on May 23, 1978 DSSH was authorized to adopt rules which disqualified all members of the assistance unit (AU) from medical and/or financial general assistance (GA) program benefits if one or more of the members of the AU was disqualified. No.

II. Whether plaintiffs are entitled to recover benefits allegedly denied them wrongfully by DSSH through October of 1982, when DSSH promulgated its rules authorized by and implementing the May 19, 1982 amendments to HRS § 346-71 (1978). Yes.

III.A. Whether defendants who are authorized to bring an action in the circuit court seeking a declaration that a certain agency rule is invalid may simultaneously seek the award of benefits allegedly denied them wrongfully. Yes.

 

III.B. Whether plaintiffs' claims against DSSH for the award of benefits allegedly denied them wrongfully are barred by the doctrine of sovereign immunity. No.

The issue presented by plaintiffs' cross-appeal and our answer is as follows:

IV. Whether plaintiffs are separately assured financial or medical GA program benefits from DSSH pursuant to HRS §§ 346-55 and 346-53(c) (1976), irrespective of their disqualification under HPWM § 3113.08 (December 1978). No.

*DEFENDANTS' APPEAL*

I.

Based on the plain and unambiguous language of HRS § 346-71 (1978), we hold that DSSH was not authorized to promulgate the disqualification provisions of HPWM § 3113 adopted by DSSH in December 1978.

When DSSH adopted HPWM § 3113 in December of 1978, HRS § 346-71 (1978) read in pertinent part as follows:[3]

General assistance. (a) The department of social services and housing shall administer and provide public assistance to eligible persons who are disabled, or are at least 55 years of age, or have dependent children in the home not otherwise provided for under this chapter, and who are unable to provide sufficient support for themselves or those dependent upon them, provided that such persons are bona fide residents of this State.

\* \* \* \* \*

(c) A person with child shall be eligible for general assistance if:

(1) He is unemployed for reasons other than voluntary separation without good cause or for misconduct; and

(2) He is actively and diligently seeking gainful employment;

---

[3]HRS § 346-71(c) was subsequently amended on June 5, 1979 to impose a sixth requirement. It provided that "or (6) He is unemployed but without sufficient income or other resources to provide sufficient support to maintain himself or those dependent upon him consistent with the standards of this chapter. Act 175, §§ 1-3, 1979 Haw. Sess. Laws 353.

and

(3) He has not refused to accept employment when offered; and

(4) He has registered and is available for work as required by section 383-29; and

(5) He has exhausted all of his benefits under chapter 383; provided, however, should the benefits of any person under chapter 383 be less than those for which he would otherwise be eligible hereunder, he shall be eligible for supplementary general assistance; and provided further, that this provision of exhaustion shall not apply to those persons not entitled by law to such benefits.

\*     \*     \*     \*     \*

(e) The department shall further require in addition to the conditions and requirements stated in subsections (c) and (d), that persons who are physically fit, able to work, and employable shall as a condition to receiving general assistance, register for work on public work projects and accept an assignment to work under section 346-31 or accept such employment as may be offered to them by the department under section 346-102 or by an employer. The term "public work projects" includes any kind of labor under the department of accounting and general services of the State or the department of public works of any county, or under any other department, board, commission, or agency of the State or any county. All such agencies may employ persons registering under this section. Payment for the work shall not be made from the funds of the agency employing such persons but shall be made from the funds of the department. The department shall promulgate such rules and regulations as it deems necessary to enforce and carry out this section.

(f) Applicants and recipients shall be required to satisfy all applicable provisions of this section. Recipients disqualified for failure to comply with any of the requirements under the provisions of this section shall be excluded from general assistance for a period not to exceed twelve months.

(g) The department shall by rules adopted pursuant to chapter 91, establish criteria and standards for the foregoing conditions and requirements.

HRS § 346-71(a) (1978) states that DSSH shall provide public assistance to three unqualified categories of individuals who are "disabled, or are at least 55 years of age, or have dependent children in the home not otherwise provided for under this chapter[.]" Similarly, HRS § 346-71(c) (1978) provides that "[a] person with child shall be eligible for general assistance" if the individual satisfies the work requirements specified in subsections (c) and (e). The statutory disqualification contained in HRS § 346-71(f) (1978) further provides that "[r]ecipients disqualified for failure to comply with any of the requirements under the provisions of this section shall be excluded from general assistance" and does not provide that all other qualifying members of the recipient household be disqualified upon the noncompliance of one adult. In our view, the language of those sections indicates a clear legislative intent to provide assistance to the qualifying individuals irrespective of the conduct of one of the adults in that household and further to require only the individual applicant to comply with the work requirements as a condition precedent to receiving benefits under the statute.

Moreover, no language appears in the statute susceptible to DSSH's interpretation that the legislature intended to authorize disqualification of all members of the household upon the disqualification of one adult. Rather, when viewing the statute in its entirety, the primary purpose of the enactment is to provide general assistance to all those needy individuals whom the legislature has defined by statute and, further, to impose certain requirements as a precondition to the receipt of benefits.

Additionally, HRS § 346-71 (1978) does not authorize DSSH to enact the additional requirements and disqualifications contained in HPWM § 3113 (December 1978). Under HRS § 346-71(e) (1978), DSSH is specifically authorized and required "to promulgate such rules and regulations as it deems necessary to enforce and carry out this section." However, this authority is limited to enacting rules and regulations which are reasonably related to carrying into effect the purposes and provisions of the legislation. *In re Carlson,* 38 Haw. 9 (1948); *United States v. Hawaii County,* 473 F.Supp. 261 (D. Hawaii 1979). It, therefore, may not enact rules and regulations which enlarge, alter, or restrict the provisions of the act being administered. *In re Carlson, supra; Dickey v. Rapid Transit Co.,* 15 Haw. 304, 307 (1903); *see also* 73 C.J.S. *Public Administrative Law and Procedure* § 89 (1983).

In our view, DSSH's interpretation of HRS § 346-71 (1978) is inconsistent with the legislative intent and purpose of the statute. There-

fore, we conclude that the rules adopted by DSSH which pertain to the disqualifications in this case are void and unenforceable.[4]

## II.

Defendants also argue that plaintiffs may only recover retroactive benefits up to May 19, 1982, the date on which relevant amendments to HRS § 346-71 were enacted by the legislature (May 19, 1982 statutory amendments) and may not recover benefits through October 1982, when DSSH promulgated the new rules implementing these amendments in accordance with the Hawaii Administrative Procedure Act (HAPA), HRS chapter 91. In essence, defendants contend that the amendments to HRS § 346-71 are effective and enforceable on the date of legislative enactment and are, therefore, not subject to the rulemaking provisions of the HAPA.[5] We disagree.

After its amendment on May 19, 1982, HRS § 346-71(e) (1982) specifically authorized and required DSSH to "promulgate such rules and regulations as it deems necessary to enforce and carry out this section." HRS § 346-71(g) (1982) further required DSSH to adopt rules pursuant to HAPA to "establish criteria and standards for the foregoing conditions and requirements." Based on these provisions, the statutory amendments did not become operative until DSSH performed the

---

[4]Defendants also contend that the failure of the legislature to amend HRS § 346-71 after DSSH's enactment of HPWM § 3113 demonstrates that their interpretation did not conflict with the legislative intent of HRS § 346-71; however, the failure of a subsequent legislature to enact amendments abrogating defendants' interpretation does not validate invalid rules.

[5]In relevant part, the legislature amended HRS § 346-71 to read as follows:

(a) The failure of any adult member of the assistance unit to comply with the requirements or conditions of general assistance shall exclude the entire assistance unit from receiving financial assistance. However, when the adult member is disqualified for not meeting the work requirement, the assistance unit shall not be disqualified if the assistance unit was formed after the failure to meet the work requirement occurred. "Assistance unit" as the term is used herein means persons whose needs, income, and assets are considered in the financial assistance payment and their dependents.

\* \* \*

(c) A person with dependent children in the home shall be eligible for general assistance if the person:

(1) Is unemployed for reasons other than voluntary separation without good cause or for misconduct within twelve months prior to application[.]

conditions specified by the statute by adopting rules implementing the amendments and establishing certain standards for its provisions. *See In re Marques,* 37 Haw. 260 (1945); 73 Am. Jur. 2d *Statutes* § 374 (1974). Thus, in order to be valid and enforceable, those rules must have been established in accordance with HAPA.[6] *Burk v. Sunn,* 68 Haw. ___, 705 P.2d 17 (1985); *Costa v. Sunn,* 64 Haw. 389, 642 P.2d 530 (1982); 5 Haw. App. 419, 697 P.2d 43 (1985). In the instant case, DSSH concedes that its rules implementing the May 19, 1982 statutory amendments were not promulgated in accordance with HAPA until October 1982. Accordingly, we affirm the lower court's decision that plaintiffs are entitled to recover benefits through October 1982.

### III.

Defendants contend that although the circuit court was authorized to issue a declaratory judgment as to the validity of DSSH's rules under HRS § 91-7 (1976), it was not authorized to grant plaintiffs' ancillary

---

[6]HRS § 91-3(a) (1976) provides:

Procedure for adoption, amendment or repeal of rules. (a) Prior to the adoption of any rule authorized by law, or the amendment or repeal thereof, the adopting agency shall:

(1) Give at least twenty days' notice for a public hearing. Such notice shall include a statement of the substance of the proposed rule, and of the date, time and place where interested persons may be heard thereon. The notice shall be mailed to all persons who have made a timely written request of the agency for advance notice of its rulemaking proceedings, and published at least once in a newspaper of general circulation in the State for state agencies and in the county for county agencies.

(2) Afford all interested persons opportunity to submit data, views, or arguments, orally or in writing. The agency shall fully consider all written and oral submissions respecting the proposed rule. The agency may make its decision at the public hearing or announce then the date as to when it intends to make its decision. Upon adoption, amendment, or repeal of a rule, the agency shall, if requested to do so by an interested person, issue a concise statement of the principal reasons for and against its determination.

HRS § 91-1(4) (1976) provides:

Definitions. For the purpose of this chapter:

(4) "Rule" means each agency statement of general or particular applicability and future effect that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice requirements of any agency. The term does not include regulations concerning only the internal management of an agency and not affecting private rights of or procedures available to the public, nor does the term include declaratory rulings issued pursuant to section 91-8, nor intra-agency memoranda.

relief by ordering defendants to pay them the benefits denied them wrongfully. Defendants assert that such ancillary relief is unauthorized by statute or case law and is barred by the doctrine of sovereign immunity. We disagree.

A.

We determined in *Costa v. Sunn,* 5 Haw. App. 419, 697 P.2d 43 (1985), that the circuit court has authority to grant ancillary monetary relief in an HRS § 91-7 declaratory judgment action. The *Costa* holding is applicable in this case.

B.

The monetary relief sought by plaintiffs is authorized by HRS § 661-1 (Supp. 1984). In relevant part, it provides:

Jurisdiction.   The several circuit courts of the State . . . shall . . . have original jurisdiction to hear and determine the following matters. . . .

(1) All claims against the State founded upon any statute of the State; or upon any regulation of an executive department[.]

Plaintiffs' claims for benefits are founded upon HRS § 346-71 which, in 1976, provided in relevant part:

General assistance.   The department of social services and housing shall administer public assistance to those needy persons not otherwise provided for under this chapter, who for reasons satisfactory to the department are unable to provide sufficient support for themselves or those dependent upon them, provided that such persons are residents of this State.

In 1978 and 1982, HRS § 346-71 was amended to provide and it now provides as follows:

General assistance.   (a) The department of social services and housing shall administer and provide public assistance to eligible persons who are disabled, or are at least fifty-five years of age, or have dependent children in the home not otherwise provided for under this chapter, and who are unable to provide sufficient support for themselves or those dependent upon them; provided that such persons have first been determined ineligible for a comparable federally funded financial assistance program and are bona fide residents of this State.

In our view, a statute that requires the DSSH to "administer public assistance to . . . needy persons" or to "administer and provide public assistance to eligible persons" authorizes the eligible persons to sue the DSSH for the recovery of those benefits wrongfully denied. Any other interpretation would improperly allow the executive department to violate the legislative mandate and frustrate the legislative purpose.

Defendants argue that *Washington v. Fireman's Fund Insurance Companies,* 68 Haw. ___ (Nos. 9411 and 9965, October 15, 1985), is authority for their contention that monetary relief is barred by the doctrine of sovereign immunity. We disagree. Upon being injured in an automobile accident, Washington, a public assistance recipient, applied for benefits under her free no-fault insurance policy. When her claim for benefits was denied, she sued for the benefits and for damages caused by the allegedly wrongful refusal to pay her the benefits. The supreme court held that she was properly denied benefits under HRS § 294-2(10) (Supp. 1984). It also held that Washington's claim for damages was barred by the doctrine of sovereign immunity. However, its holding with respect to Washington's claim for damages was not directed at and is not applicable to her claim for benefits. It was directed at and applies only to her claim for special damages, $175,000 general damages, and no less than $7 million punitive damages allegedly caused by the wrongful refusal to pay benefits.[7]

*PLAINTIFFS' CROSS-APPEAL*

IV.

Plaintiffs contend that under HRS §§ 346-55 and 346-53(c) (1976) certain children and adults under 21 were guaranteed "public assistance benefits" and could not be disqualified from those benefits by HPWM § 3113.08 (December 1978). We disagree.

HRS §§ 346-53(c) and 346-55 (1976) provides as follows:[8]

§ 346-53   Determination of amount of assistance.

---

[7]*See* Washington's complaint filed on October 27, 1982 in Third Circuit Court Civil No. 8303.

[8]HRS §§ 346-53(c) and 346-55 (1976) were subsequently repealed by the legislature on June 6, 1983 by Act 196, §§ 2 and 3, 1983 Haw. Sess. Laws 399-401.

(c) If a child is eligible for public assistance under section 346-55, and if the child lives in a home or a place of residence maintained as a home by a relative specified under section 346-55, and if such a relative is a person essential to the child's well being, then the department shall pay in behalf of each child the basic needs allowance and shelter allowance as prescribed in this chapter. The department shall make such payment regardless of whether such relative does or does not receive public assistance.

§ 346-55  Children.  A child shall be eligible for public assistance who:

(1) Is in need, and has not sufficient income or other resources to provide health care and support to maintain a standard consistent with this chapter;

(2) Has not attained the age of eighteen years or twenty-one years if regularly attending school;

(3) Is deprived of parental support or suitable care by reason of the death, continued absence from home, physical or mental incapacity, unemployment, or cruelty, neglect, or depravity on the part of the parent;

(4) Is living in a home with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, uncle, aunt, first cousin, nephew, or niece in a place of residence maintained by such a relative as his own home; or is living in a family home or institution conforming to the standards fixed by the department of social services and housing.

These provisions apply exclusively to the half federally funded AFDC program, *see Filipo v. Chang,* 62 Haw. 626, 618 P.2d 295 (1980), and not to the GA program which is a separate and distinct program totally funded by the state.

## CONCLUSION

### V.

Affirmed.

*Steven K. Chang,* Deputy Attorney General, on the briefs for appellants/cross-appellees.

*Ben H. Gaddis* (Hilo, Hawaii) and *Brenton Rogozen* (Honolulu, Hawaii), Legal Aid Society of Hawaii, on the briefs for appellees/cross-appellants.